## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MELIKA SAVOJ, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **2:24-cv-1049-ACA** |
| | ] | |
| **ANTONY J BLINKEN, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

In December 2022, Plaintiffs Ahmadreza Savoj and Leila Feiz applied for visas to visit the United States, where their daughter, Plaintiff Melika Savoj, is a lawful permanent resident. They allege that the U.S. Department of State has unreasonably delayed adjudicating their visa applications. As a result, Plaintiffs filed suit against the U.S. Secretary of State, the Consul General of the U.S. Embassy in Paris, and ten fictitious defendants employed at the U.S. Department of State, seeking a declaration that the delay is unreasonable or otherwise unlawful and an order compelling Defendants to adjudicate their applications. Defendants move to dismiss the complaint[1] under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. (Doc.

---

[1] Plaintiffs' filing is both a complaint and a petition for writ of mandamus. (Doc. 1). For ease of reference, the court will refer to it simply as a "complaint."

12). The court **WILL GRANT** the motion and **WILL DISMISS** Count One for lack of jurisdiction and Count Two in part for lack of standing and in part for failure to state a claim.

## I.    IMMIGRATION FRAMEWORK

The Immigration and Nationality Act ("INA") vests in consular officers the ability to issue visas. 8 U.S.C. § 1201(a)(1). The statute prohibits issuance of a visa if "it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law" or if "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." *Id.* § 1201(g) (commonly referred to as "INA § 221(g)").

Section 1182 of title 8 of the U.S. Code sets out classes of aliens ineligible for visas or admission. *Id.* § 1182(a). But other provisions of law also set out grounds of ineligibility. One such provision is the Enhanced Border Security and Visa Entry Reform Act of 2002, which prohibits issuance of the type of visas Plaintiffs seek "to any alien from a country that is a state sponsor of international terrorism unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate United States agencies, that such alien does not pose a threat to the safety or national security of the United States." *Id.* § 1735(a); *see* 8

U.S.C. § 1101(a)(15)(B); (doc. 1 ¶¶ 7–8). Iran has been designated as a state sponsor of terrorism since 1984. *See* U.S. Dep't of State, *State Sponsors of Terrorism*, https://www.state.gov/state-sponsors-of-terrorism (last visited August 26, 2025); *see also* Fed. R. Evid. 201(b). According to the Secretary of State's internal "interpretive rules," *see Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015), the Secretary determines whether an alien poses a threat to the safety or national security of the United States by issuing a "security advisory opinion," 1 Foreign Affairs Manual § 254.2-3(a) (providing that the Screening Division "[r]enders security advisory opinions on the visa eligibility of aliens who may fall within the purview of . . . section 306 of the Enhanced Border Security and Visa Entry Reform Act of 2002"); (*see also* doc. 1 ¶ 45).

Regulations implementing the INA refer to nonissuance of a visa as "refusal" of a visa. *See* 22 C.F.R. § 40.6 ("A visa can be refused only upon a ground specifically set out in the law or implementing regulations."); *id.* § 41.121(a) (providing in relevant part that upon submission of a complete visa application, "the consular officer must issue the visa[ ] [or] refuse the visa"). Even after a visa has been refused, "administrative processing" may continue and may result in reopening an application for "re-adjudication." 9 Foreign Affairs Manual §§ 403.10-4(B)(a), 306.2-2(A)(a)(2)(a).

The INA and the relevant regulations do not use the term "administrative processing." *See generally* 8 U.S.C. §§ 1101–1537; 22 C.F.R. §§ 40.1–46.7. The Foreign Affairs Manual does refer to "administrative processing," but it does not define the term. 9 Foreign Affairs Manual §§ 403.10-4(B)(a), 306.2-2(A)(a)(2)(a). Plaintiffs allege that "administrative processing" is a process by which the consular officer requests the "security advisory opinion" needed to decide whether an alien otherwise ineligible under § 1735 can be issued a visa. (Doc. 1 ¶ 45); *see also* 9 Foreign Affairs Manual § 102.3-1(h) (defining an "advisory opinion" as "a legal opinion from the Department regarding the interpretation or application of law or regulation related to a specific case").

## I.    BACKGROUND

Defendants move to dismiss the complaint on jurisdictional grounds under Rule 12(b)(1) and merits grounds under Rule 12(b)(6). (Doc. 12). Because Defendants' jurisdictional and merits challenges are based on the allegations in the complaint, the court must accept those allegations as true. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013). The court may also consider documents Plaintiffs attached to the complaint. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . .").

Mr. Savoj and Ms. Feiz are Iranian nationals who reside in France.[2] (Doc. 1 ¶¶ 7–8). Their daughter, Ms. Savoj, is a lawful permanent resident of the United States. (*Id.* ¶ 6). In December 2022, Mr. Savoj and Ms. Feiz submitted visa applications to visit the United States. (Doc. 1-1). On January 4, 2023, a consular officer at the U.S. Embassy in Paris interviewed them. (Doc. 1 ¶ 21). The officer gave them a form stating that their "visa application[s are] refused under the provision 221(g) of the United States Immigration and Nationality Act" because the officer had "determined [the] visa application[s] require[d] further administrative processing." (Doc. 1-2). Specifically, the consular officer concluded that Mr. Savoj and Ms. Feiz needed to submit a "DS-5535 Form" and a copy of Mr. Savoj's translated military exemption card. (*Id.*; doc. 1 ¶ 21).

The DS-5535 form "collects detailed travel, residence and employment history, name[s] of family members, phone numbers, email addresses, and various other information" covering fifteen years before the application. (Doc. 1 ¶ 22). The form was originally developed to comply with an executive order issued in 2017. (*Id.* ¶ 60); Executive Order No. 13780, Protecting the Nation from Foreign Terrorist

---

[2] In a supplemental response, Dr. Savoj asserts that he is also a citizen of France and he would travel to the United States on his French passport. (Doc. 29 at 1). The complaint does not make that allegation. (*See* doc. 1 ¶ 7). Accordingly, the court cannot consider the allegation that Dr. Savoj is a French citizen for purposes of addressing the motion to dismiss. *See* Fed. R. Civ. P. 12(d) (prohibiting the court from considering "matters outside the pleadings" in ruling on a Rule 12(b)(6) motion to dismiss; *Houston*, 733 F.3d at 1335–36.

Entry into the United States, 82 Fed. Reg. 13,209, 13,215 (Mar. 6, 2017). Presidential Proclamation 10141 revoked that executive order in 2021. Ending Discriminatory Bans on Entry to the United States, 86 Fed. Reg. 7,005, 7,005 (Jan. 20, 2021); (*see* doc. 1 ¶ 61). The court takes judicial notice that while this case was pending, another presidential proclamation largely reinstated the original executive order. Presidential Proclamation 10949, Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats, 90 Fed. Reg. 24497 (June 4, 2025);[3] *see* Fed. R. Evid. 201(b). The Secretary of State continued to use the DS-5535 form throughout all of these legal changes. (*See* doc. 1 ¶ 61).

Mr. Savoj and Ms. Feiz submitted the DS-5535 forms and Mr. Savoj's military exemption card on January 8, 2023. (*Id.* ¶ 22). They have contacted the embassy several times since then, but the visa unit there has responded only that the "visa application is under an administrative processing." (Doc. 1-3 at 1–2). Similarly, when Ms. Savoj inquired about the status of her parents' applications, the visa unit responded that "we cannot process your parents' visa application until the

---

[3] Given the issuance of Presidential Proclamation 10949 during the pendency of this case, the court ordered the parties to provide supplemental briefs about its impact on both the court's jurisdiction and all of the claims presented. (Doc. 27 at 2). Both parties deny that the proclamation has any effect on either this court's jurisdiction or the merits of any claims. (Docs. 28, 29).

security vetting is complete." (*Id.* at 3). As of the filing of this lawsuit in August 2024, the "administrative processing" was still ongoing. (Doc. 1 ¶ 24).

## II.   DISCUSSION

Plaintiffs' complaint seeks relief under either the Mandamus Act or the Administrative Procedure Act. (*Id.* at 13–19). The court will address each request separately.

### 1.  Count One (Writ of Mandamus)

In Count One, Plaintiffs seek a writ of mandamus to compel Defendants to complete the administrative processing of the visa applications. (Doc. 1 ¶¶ 47–51). Defendants contend that the court lacks jurisdiction because (1) the pace at which consular officers adjudicate visa applications is discretionary; and (2) the consular officer already denied Mr. Savoj's and Ms. Feiz's visa applications and further administrative processing is discretionary. (Doc. 12 at 11–16). The court agrees that it lacks jurisdiction over Count One.

The Mandamus Act gives the court "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Under Eleventh Circuit precedent, the court has jurisdiction if mandamus is "an appropriate means of relief." *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003). "Mandamus jurisdiction may be exercised only if (1) the plaintiff has a clear right to

the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1036 (11th Cir. 2021) (quotation marks omitted). The plaintiff must have "exhausted all other avenues of relief" and the defendant must "owe[ ] [the plaintiff] a clear nondiscretionary duty." *Id.* at 1037 (quotation marks omitted).

As the court set out above, the only requirement the INA imposes on consular officers is to refuse issuance of a visa if "it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . under . . . any . . . provision of law." 8 U.S.C. § 1201(g). The only requirement the regulations impose is to either "issue the visa[ ] [or] refuse the visa" upon receipt of a complete application. 22 C.F.R. § 41.121(a). The consular officer in this case refused to issue the visa application "under the provision 221(g) of the United States Immigration and Nationality Act." (Doc. 1-2 at 1). Accordingly, the consular officer complied with her nondiscretionary duty to either issue or refuse the visa.

Plaintiffs argue that the refusal was not a final determination because (1) "administrative processing" is still not complete and (2) the refusal form they received did not contain the information both statute and regulation require denial notices to include. (Doc. 17 at 10–18). The court disagrees with both arguments.

First, the existence of ongoing "administrative processing" does not make the consular officer's refusal of the visa applications non-final. Section 1201(g) prohibits a consular officer from issuing a visa if it even "appears" to the consular officer that the alien is ineligible under "any . . . provision of law." 8 U.S.C. § 1201(g). As Plaintiffs concede (*see* doc. 17 at 8), they are facially subject to § 1735, which bars issuance of a visa to Iranian nationals "unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate United States agencies, that such alien does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a). Nothing in § 1735(a) requires the Secretary of State to find the exception applicable to any alien, although it permits the Secretary to make that determination. *See id.* So, even taking Plaintiffs' allegations as true and construing them in the light most favorable to them, it "appear[ed]" to the consular officer that Mr. Savoj and Ms. Feiz were ineligible, and the consular officer's only nondiscretionary duty was to refuse the visa applications. *See id.* § 1201(g).

Plaintiffs cite to various district court cases concluding that ongoing "administrative processing" renders the visa refusal non-final. (*See* doc. 17 at 14–18; docs. 30, 30-1, 30-2). Those cases are neither binding nor persuasive in light of the analysis above. Because nothing in the INA or the regulations require a consular officer to conduct "administrative processing," this court lacks the authority to issue

a writ of mandamus compelling Defendants to complete the "administrative processing" that they were not required to begin. *See* 8 U.S.C. § 1201(g); 22 C.F.R. § 41.121(a). Moreover, as the cases Plaintiffs cite highlight, courts have split about whether "administrative processing" makes a visa refusal non-final. *See, e.g.*, *Yu v. Blinken*, No. 24-6347, 2025 WL 1669055, at *6 & nn.55–56 (E.D. Penn. June 12, 2025) (collecting cases illustrating the split). At a minimum, this split shows that Plaintiffs do not have a "*clear* right to the relief requested." *Hakki*, 7 F.4th at 1036 (emphasis added).

Plaintiffs also argue that the refusal notice was not final because it did not contain certain information required by statute and regulation. (Doc. 17 at 12, 15–16). Section 1201(g) provides that a consular officer must not issue a visa if it appears that the alien is ineligible under § 1182 or any other provision of law. 8 U.S.C. § 1201(g). Section 1182 sets out classes of aliens ineligible for visas or admission. *Id.* § 1182(a). Section 1182 also provides that if a consular officer denies a visa application "because the officer determines the alien to be inadmissible under subsection (a), the officer shall provide the alien with a timely written notice that . . . (A) states the determination, and (B) lists the specific provision or provisions of law under which the alien is admissible." *Id.* § 1182(b). In addition, the regulations provide that a consular officer refusing to issue a visa "must inform the alien of the ground(s) of ineligibility . . . and whether there is, in law or regulations, a

10

mechanism (such as a waiver) to overcome the refusal. The officer shall note the reason for the refusal on the application." 22 C.F.R. § 41.121(b)(1).

The refusal notice provided to Mr. Savoj and Ms. Feiz does not list the specific provision of law under which the consular officer found or believed them to be ineligible for admission. (Doc. 1-2). It simply states that the "application is refused under the provision [INA] 221(g)" and that further administrative processing was necessary. (*Id.*). It is not clear whether a general reference to INA § 221(g) satisfies the regulatory requirement to "inform the alien of the ground(s) of ineligibility." 22 C.F.R. § 41.121(b)(1). But even assuming the refusal notice violated both the statute[4] and the regulations with respect to the information it must contain, Plaintiffs have not explained how that violation would make the refusal non-final. (*See* doc.17 at 15–16). Accordingly, they have not shown a "clear right to the relief requested." *Hakki*, 7 F.4th at 1036.

Plaintiffs have not shown that Defendants failed to do any nondiscretionary duty imposed on them. Accordingly, mandamus relief is not appropriate and this court lacks subject matter jurisdiction over this claim. The court therefore **WILL**

---

[4] The court notes that if the consular officer refused the visa applications based on § 1735, then § 1182(b)'s requirements about the information that must be contained in the refusal notice are irrelevant because those requirements apply only when "the officer determines the alien to be inadmissible under subsection (a)" of § 1182. 8 U.S.C. § 1182(b).

**DISMISS** Count One **WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

### 2. Count Two (APA)

In Count Two, Plaintiffs appear to make two subclaims: (1) placing the visa applications into indefinite administrative processing is an unreasonable delay under 5 U.S.C. § 706(1); and (2) requiring the submission of the DS-5535 form is an unlawful action under § 706(2)(A). (Doc. 1 ¶¶ 59, 61, 66). The court construes the subclaims as seeking to (1) compel an adjudication of the visa applications; and (2) set aside the use of the DS-5535 form. (*See id.*).

#### a. Adjudication of the Visa Applications

The APA authorizes "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to bring suit. 5 U.S.C. § 702; *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004). "Agency action" includes "failure to act." 5 U.S.C. § 551(13); *see also id.* § 555(b) (requiring agencies to "proceed to conclude a matter presented to [them]" "within a reasonable time"). The APA allows federal courts to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). But "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 64 (emphases omitted). In other

words, "the only agency action that can be compelled under the APA is action legally required." *Id.* at 63 (emphasis omitted).

Defendants contend that this court lacks jurisdiction because they have done all that was legally required of them by refusing the visa applications. (Doc. 12 at 10–16). Although the court agrees that, for the reasons explained above, Plaintiffs have not established that Defendants have failed to take a legally required action, the court disagrees that that conclusion requires dismissal for lack of subject matter jurisdiction.

The APA does not clearly state that a failure to establish the right to relief means that the court lacks jurisdiction. *Cf.* 5 U.S.C. § 704 (limiting the court's jurisdiction only to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy"); *id.* § 706 (lacking any jurisdictional language). The *Norton* case also does not speak in jurisdictional terms when setting out the standard for a § 706(1) action. *See* 542 U.S. at 63–64. Nor has this court located any published Eleventh Circuit decisions holding that a failure to state a claim under § 706(1) deprives this court of subject matter jurisdiction. The Supreme Court has explained that the determination whether a statute sets out a jurisdictional limit begins with an inquiry into whether "Congress has clearly stated that the rule is jurisdictional; absent such a clear statement . . . , courts should treat the restriction as nonjurisdictional in character." *Sebelius v. Auburn Reg'l Med. Ctr.*,

13

568 U.S. 145, 153 (2013) (quotation marks omitted; alteration accepted). Accordingly, the court will not dismiss Count Two based on a lack of subject matter jurisdiction, but instead **WILL DISMISS** this part of Count Two **WITH PREJUDICE** for failure to state a claim, under Rule 12(b)(6).[5]

### b. Setting Aside Use of the DS-5535 Form

Plaintiffs also appear to challenge the use of the DS-5535 form on the basis that the executive order that prompted its initial use has been revoked, so its continued use is unlawful. (Doc. 1 ¶¶ 60–61). The APA authorizes courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Defendants contend that Plaintiffs lack standing to bring this subclaim and that it fails on the merits in any event. (Doc. 12 at 28–33). This court agrees that Plaintiffs lack standing to request that the court set aside the use of the DS-5535 form.

Article III of the U.S. Constitution requires that the court "adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Standing is one component of the case-or-controversy requirement. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, Plaintiffs must demonstrate that they "(1) suffered an injury in fact, (2) that is fairly traceable

---

[5] In light of this ruling, the court does not address Defendants' alternative arguments about the consular nonreviewability doctrine or the reasonableness of any delay. (Doc. 12 at 16–28).

to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

It is not clear from Plaintiffs' complaint whether they are seeking to set aside the past or future collection of DS-5535 forms. (*See* doc. 1 ¶ 61). Despite Defendants' challenge to this subclaim (doc. 12 at 28–33), Plaintiffs' brief does not address this claim at all (*see generally* doc. 17). The court will therefore address both possibilities.

To the extent Plaintiffs seek to set aside the past collection of DS-5535 forms from them, their injury would be the submission of a DS-5535 form despite the alleged lack of legal authority for requiring submission of such a form. (*See* doc. 1 ¶ 61). But setting aside their submission of the DS-5535 forms would not redress that injury: they would still have submitted the form. *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2139 (2025) ("[T]o show redressability, the plaintiff must simply show a predictable chain of events that would likely result from judicial relief and redress the plaintiff's injury.") (quotation marks omitted); *cf. Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("[I]njunctions . . . do not provide relief for past injuries already incurred and over with."). Insofar as Plaintiffs contend that their injury is the delay in re-adjudicating their visa applications, they also have not explained how setting aside their submission of the

DS-5535 forms would speed up the re-adjudication or otherwise redress that injury. (*See* doc. 1 ¶ 61; *see generally* doc. 17).

To the extent Plaintiffs' claim about the DS-5535 form seeks prospective relief in the form of setting aside future use of that form, their injury would, again, be the requirement to submit a form that the Secretary of State allegedly lacks legal authority to require. But when seeking prospective relief, plaintiffs must show a prospective injury, not a past injury. *See 31 Foster Child. v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003) ("When a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief *even if he has suffered a past injury*.") (emphasis added). Plaintiffs have not alleged that they plan to re-apply for visas. (*See generally* doc 1). They have therefore not shown an "imminent or real and immediate" threat of "future injury." *Bush*, 329 F.3d at 1265.

Because Plaintiffs have not shown standing to challenge the use of the DS-5535 forms, they court **WILL DISMISS** this part of Count Two for lack of jurisdiction.

### III.    CONCLUSION

The court **WILL GRANT** Defendants' motion to dismiss the complaint. (Doc. 12). The court **WILL DISMISS** Count One and the part of Count Two challenging the use of the DS-5535 form **WITHOUT PREJUDICE** for lack of

subject matter jurisdiction. The court **WILL DISMISS** the part of Count Two seeking to compel an adjudication of the visa applications **WITH PREJUDICE** for failure to state a claim.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this August 26, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE